United States District Court
Southern District of Texas
**ENTERED**
October 12, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
|   Plaintiff/Respondent, § | |
| § | |
| v. § | CRIMINAL ACTION NO. 2:20-cr-854-1 |
| § | CIVIL ACTION NO. 2:22-cv-88 |
| JOSE EDWIN ZUNIGA-DIAZ, § | |
|   Defendant/Movant. § | |

## MEMORANDUM OPINION AND ORDER

Defendant/Movant Jose Edwin Zuniga-Diaz, *pro se*, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 115).[1] Pending before the Court is the United States of America's (the "Government") Motion for Summary Judgment (Dkt. No. 130), to which Movant has responded (Dkt. No. 131). For the reasons stated herein, the Government's motion is **GRANTED**, and Movant's Section 2255 motion is **DENIED**.

**I.  BACKGROUND**

In 2019 and 2020, agents with Homeland Security Investigations investigated numerous attempts to transport undocumented aliens through the immigration checkpoint near Sarita, Texas using trucks displaying fraudulent business logos. Three confidential defendants in two federal cases identified Movant as the leader of the alien smuggling organization using those trucks, and Movant's Facebook posts and messages corroborated his involvement. Agents also confirmed that Movant was an illegal alien

---

[1]  Docket entries refer to the criminal case.

from Honduras, who was ordered removed/deported from the United States in 2011, and physically deported in 2011, 2015, and 2016.

Movant was charged with conspiracy to transport undocumented aliens (Count 1) and illegal reentry (Count 2). The indictment also contained a criminal forfeiture provision. On May 6, 2021, Movant pled guilty pursuant to a written Plea Agreement (Dkt. No. 67), Stipulation of Fact in Support of Defendant's Plea (Dkt. No. 66) and Agreed Motion for Preliminary Order of Forfeiture (Dkt. No. 68).

At his May 6, 2021, rearraignment hearing, Movant affirmed under oath that he had been able to communicate with his retained counsel, Mr. Erik Sunde, in Spanish and that he had had enough time to discuss the case with counsel. (Dkt. No 122, 5/6/2021 Hrg. Tr. at 4:12-14, 5:11-13). Movant testified that counsel had translated the indictment into Spanish and that he understood the nature of the charges, the elements of each offense, and his right to plead not guilty and proceed to trial. (*Id*. at 5:2–7:19, 8:4-24). Movant stated that he and counsel had discussed how his sentence would be calculated under the Sentencing Guidelines and that he understood he faced a maximum of 20 years in prison and deportation upon his release. (*Id.* at 7:20–8:1, 8:25–10:23). He further testified that he was not threatened or promised leniency in exchange for his guilty plea. (*Id.* at 11:2-7).

Counsel for the Government summarized the terms of the written Plea Agreement, wherein, in exchange for Movant's guilty plea, the Government agreed to recommend that Movant receive maximum credit for acceptance of responsibility and a sentence within the applicable Guideline range. (*Id.* at 11:14–12:11). As part of the Plea

Agreement, Movant waived his right to appeal or collaterally attack his conviction or sentence, except to raise a claim of ineffective assistance of counsel. Movant testified that the Government's summary was correct, counsel had read the Plea Agreement to him in Spanish and discussed it with him in Spanish, and that he (Movant) understood and signed the Plea Agreement. (*Id.* at 12:12-22). Movant acknowledged that he could not withdraw his guilty plea if he did not receive the sentence he was expecting or had hoped for. (*Id.* at 13:1-10). Movant further testified that counsel had read the Stipulation of Fact to him in Spanish and discussed it with him in Spanish, that the information contained in the Stipulation was true, and that he (Movant) had signed the Stipulation. (*Id.* at 14:18–15:5). The Court accepted Movant's guilty plea after being satisfied that he was competent to enter a plea, there was a factual basis for the plea, he understood the consequences of entering a plea, and he was voluntarily and knowingly pleading guilty. (*Id.* at 15:6-17).

On September 21, 2021, Magistrate Judge Jason B. Libby held a motion hearing to address the substitution of counsel after Movant hired attorney Harold Christopher Waller to replace Mr. Sunde. (*See* 9/21/2021 Hrg. Tr., Dkt. No. 125). The Court granted Movant's request to substitute counsel and addressed Movant's letter requesting a copy of the Presentence Investigation Report (PSR). Movant's letter claimed that Mr. Sunde had not provided him a copy of the PSR and also stated that he felt Mr. Sunde was not "working in my best intrest [*sic*], so I decided to hire a new lawyer." (Dkt. No. 101, p. 1). Mr. Sunde clarified for the Court that he had provided a copy of the revised PSR to Movant the previous week, that he had reviewed the initial PSR in person with Movant

(in Spanish) in June of 2021, and that there were no changes between the initial PSR and the revised PSR. Movant agreed that Mr. Sunde had reviewed the initial PSR with him.

The revised PSR (Dkt. No. 91) grouped Counts One and Two and calculated Movant's base offense level for the alien transporting conspiracy at 12. Nine levels were added because the offense involved more than 100 aliens, two levels were added because Movant had previously been convicted of illegal reentry, two levels were added because the offense created a substantial risk of death or serious bodily injury to another person, and four levels were added because Movant was deemed an organizer/leader of criminal activity that involved five or more participants or was otherwise extensive. After credit for acceptance of responsibility, his total offense level was 26. With a criminal history category of II, his advisory Guidelines sentencing range was 70–87 months. Movant did not raise any objections to the PSR. The Court adopted the findings contained in the PSR and sentenced Movant to 70 months' imprisonment on each count, to be served concurrently.

Judgment was entered November 1, 2021. Movant did not appeal. He filed the present motion under 28 U.S.C. § 2255 on April 7, 2022. It is timely.

## II.   MOVANT'S ALLEGATIONS

Movant claims that his guilty plea was unknowing and involuntary due to Mr. Sunde's constitutionally ineffective representation. Specifically, Movant claims that Mr. Sunde promised him a sentence of 24 months or less and lied to him about the existence of a plea agreement, which induced Movant to plead guilty.

### III. LEGAL STANDARDS

#### A. 18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

#### B. INEFFECTIVE ASSISTANCE OF COUNSEL

An ineffective assistance of counsel allegation presented in a Section 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting

effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter*, 131 F.3d at 463.

Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364–65, (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970), and citing *Strickland*, 466 U.S. at 686). *Strickland's* two-part analysis applies to claims of ineffective assistance of counsel in this context. *E.g.*, *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). During this stage of a proceeding, the Supreme Court has reiterated that counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'" *Padilla*, 559 U.S. at 370 (citing *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). "It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly," and the "lawyer must actually and substantially assist his client in deciding whether to plead guilty." *United States. v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008) (quoting and *citing Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974)). "It is his job to provide the accused an understanding of the law in relation to the facts." *Id.* "The advice he gives need not be perfect, but it must be

6

reasonably competent." *Id.* In this context, the prejudice prong requires the prisoner to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Hill*, 474 U.S. at 59). "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *Id.* at 209; *accord Padilla*, 559 U.S. at 372 ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

## IV. ANALYSIS

Movant claims that he was coerced into pleading guilty instead of going to trial after Mr. Sunde promised him that he had a plea agreement with the Government for a sentence "less than 24 months." (Dkt. No. 115, p. 3). However, "Movant was never presented with a plea agreement prior to entering his plea," and it was only after he entered his guilty plea that Mr. Sunde commenced negotiations with the Government. (*Id.*). According to Movant, "the 'deal' increased from 24 months to 36 months and then all the way to the 70 months that the Movant ultimately received." (*Id.*, pp. 3–4). Movant further states that he was forced to replace Mr. Sunde one month before sentencing after Mr. Sunde failed to provide him with a copy of his PSR. Movant claims that Mr. Sunde "admitted incompetence regarding the Presentence Report" in open court, which "weighs in the Movant's favor regarding his assertion that it was his understanding that he had a maximum fixed term of sentence in place prior to his entry of a guilty plea." (*Id.*, p. 4).

Movant's claim that he was never presented with a plea agreement before he pled guilty is demonstrably false. A copy of the Plea Agreement bearing Movant's signature was docketed as part of the record two days before he entered his guilty plea. (Dkt. No. 67). As detailed *supra*, Movant testified at rearraignment that the Government's summary of the Plea Agreement was correct, counsel had read the Plea Agreement to him in Spanish and discussed it with him in Spanish, and that he (Movant) understood and signed the Plea Agreement. Mr. Sunde also never "admitted incompetence" during the hearing on Movant's motion to substitute counsel.

With respect to sentencing, a guilty plea is considered knowing and voluntary so long as a defendant knows "the maximum prison term and fine for the offense charged." *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)). As long as Movant "'understood the length of time he might possibly receive, he was fully aware of his plea's consequences.'" *See Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982) (quoting *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981)).

As set forth *supra*, Movant testified at rearraignment that he understood how his sentence would be calculated under the Sentencing Guidelines, that he was facing up to 20 years' imprisonment, and that he could not withdraw his guilty plea if he did not receive the sentence he was hoping for. He also stated that he was not promised leniency if he pled guilty. Movant's sworn statements in open court are entitled to a strong presumption of truthfulness. *See United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords

8

"great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002). A signed, unambiguous plea agreement is also accorded great evidentiary weight when deciding if the plea is entered voluntarily. *See Bonvillan v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986). Finally, even if counsel incorrectly advised Movant that he would receive a sentence of 24 months—a scenario that is not supported by the record and this Court does not decide—there can be no prejudice because the Court advised Movant of his sentencing exposure before his guilty plea.

Movant's Plea Agreement and sworn statements at rearraignment preclude the relief he seeks here. The evidence before the Court supports the finding that counsel was not ineffective and that Movant's guilty plea was knowing and voluntary.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the Section 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he

petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a Section 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Movant is not entitled to a COA. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI.    CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment (Dkt. No. 130) is **GRANTED**, and Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 115) is **DENIED**. Movant is further **DENIED** a Certificate of Appealability.

It is SO ORDERED.

Signed on October 11, 2022.

                                                                                               _____
                                                                                                       **DREW B. TIPTON**
                                                                                 **UNITED STATES DISTRICT JUDGE**